UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Y'MINE McCLANAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-328 |
| | ) | |
| STAB'S PRIME LLC D/B/A STAB'S PRIME | ) | |
| STEAK AND SEAFOOD, DOE DEFENDANTS | ) | |
| 1-10, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Y'Mine McClanahan, who brings this suit as a result of the discrimination she suffered when denied service on July 23, 2024.

## INTRODUCTION

1.     On July 23, 2024, Y'Mine McClanhan went to Stab's Prime Steak and Seafood for lunch, but was refused service.

2.     Ms. McClanahan, who is Black and was at the Vice President of the Baton Rouge NAACP chapter at the time of the incident, was asked to leave Stab's due to a purported "dress code violation," but white patrons and employees – including the Stab's co-owner who refused to serve Ms. McClanahan – were dressed similarly.

3.     To be publicly discriminated against was extremely humiliating for Ms. McClanhan and, furthermore, it was illegal.

4.      Ms. McClanahan now brings this lawsuit to enforce her rights under Title II of the Civil Rights Act and Louisiana state law.

## VENUE AND JURISDICTION

5.      Venue is proper pursuant to 28 U.S.C. § 1391 in that Defendants are subject to personal jurisdiction in the Middle District of Louisiana. Stab's Prime Steak and Seafood is situated in the Middle District of Louisiana and a substantial part of the events giving rise to the claims occurred in the Middle District of Louisiana. All parties are domiciled in the Middle District of Louisiana.

6.      This court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, in that Plaintiff's claims arise under the laws of the United States. This court has supplemental jurisdiction over Plaintiff's claims arising from state law in accordance with 28 U.S.C. § 1367.

## PARTIES

### *Plaintiff*

7.      Plaintiff Y'Mine McClanahan is a person of the full age of majority who is domiciled in East Baton Rouge Parish, Louisiana. She brings this lawsuit to enforce her rights under Title II of the Civil Rights Act and Louisiana state law.

### *Defendants*

8.      Defendant Stab's Prime, LLC d/b/a Stab's Prime Steak and Seafood is a business located in East Baton Rouge Parish, Louisiana. Upon information and belief, Stab's has twenty or more employees for each working day in each of twenty or more calendar weeks in any given year.

9.      Doe Defendants 1-10 are individuals or entities now currently known to Plaintiff who may have participated in, allowed, or otherwise perpetuated the damages and other claims alleged herein.

## FACTUAL ALLEGATIONS

10.     Y'Mine McClanahan is a nurse and long-time resident of Baton Rouge, Louisiana.

11.     Ms. McClanahan was also the Vice President of the Baton Rouge branch of the NAACP, an organization which seeks to address major areas of inequality and discrimination facing African Americans and other minorities in the Baton Rouge area.

12.     Stab's Prime LLC operates at least two Baton Rouge-area restaurants: Stab's Prime Steak and Seafood which is located at 7666 Jefferson Highway and Stab's Steak and Seafood Central which is located at 13438 Magnolia Square Drive.

13.      Ms. McClanahan has been a longtime patron of the Central location, which was one of her favorite restaurants. Both locations are self-described on their websites as "fine dining" and have largely identical menus.

14.     On July 23, 2024, Ms. McClanahan went to the Stab's Prime Steak and Seafood ("Stab's") location for lunch.

15.     Ms. McClanahan wore a modest floral top and an ankle-length skirt she bought for $75.00 from H&M to lunch – an outfit that she had worn to the Central location several times without incident, including just two weeks earlier.

16.     Ms. McClanahan can be seen in the outfit here:



17.     Ms. McClanahan expected to receive similar service at the Prime location as she had come to expect at the Central location.

18.     But when she arrived, Ms. McClanahan was met by Stab's co-owner Dori Murvin, who refused to seat her.

19.     Ms. Murvin's purported explanation was that the outfit violated Stab's "business casual" dress code.

20.     The dress code, as stated on the website at the time of the incident, was:

## ATTIRE POLICY

ATTIRE POLICY | CAKE POLICY

**WHAT TO WEAR**

Business casual. Proper Attire is required.

Appropriate for a fine dining, family restaurant.

With respect kindly remove ball caps when entering our dining room.

Thank You For NOT Wearing:

Gym Wear, Sweat Pants, Tank Tops, Clothing with Offensive Graphics or Language, Exposed Undergarments or Revealing Clothing. Cut-off shorts and Flip Flops. Torn Jeans.



[1]

21.    Ms. McClanahan's outfit did not fall under any of the specifically banned items listed in the policy.

22.    Ms. McClanhan was shocked at the refusal of service, especially because white patrons and employees at Stab's were wearing less appropriate attire.

23.    Ms. McClanahan recorded a portion of the conversation between her and the Stab's co-owner.

24.    Ms. McClanahan told the Stab's co-owner that she was recording and asked her for an explanation of how her outfit violated the policy. She was told that it was "just too revealing at the top."

25.    When Ms. McClanhan pointed out that Stab's had "waitresses in here with fishnet stockings and their butts halfway out," the Stab's co-owner merely reiterated that they have had the dress code "for a while."

---

[1] https://web.archive.org/web/20240629204240/https://stabsprime.com/policies/attire-policy/

26.     Ms. McClanahan specifically asked what had changed in the two weeks since she had worn the outfit to the Central location, but the Stab's co-owner stated that she was not there that day, so could not address her concerns and reiterate that it was about "what's revealing."

27.     But when white patrons and employees were wearing similarly "revealing at the top" or even more revealing attire, they were allowed to dine at Stab's. For example, the following photos were taken from Stab's social media.

28.     This person was a patron at Stab's:



29.     These people were patrons at Stab's:



30.     This person was a patron at Stab's:



31.     This person was a patron at Stab's:



32.     These people were patrons at Stab's:



33.     On July 23, 2024, Ms. McClanahan also took a video of a white server who was

wearing fishnets and short-shorts.

34.     This is that server:



35.    Stab's has also advertised itself with a white woman with a see-through top over a

tank top:



36.     And even the Stab's co-owner who refused to serve Ms. McClanahan was violating

the policy by wearing a tank top, which is specifically banned.

37.     This is Dori Mulvin:



38.     Curiously, following this incident Stab's updated its attire policy to remove "tank tops" as a banned item.

39.     After Ms. McClanahan left Stab's, she went to a nearby restaurant where she was not only served, but received several compliments on her outfit.

40.     Ms. McClanahan was utterly humiliated by this act of discrimination. As she explained to WAFB News who interviewed her about the incident: "I left feeling kind of mortified, violated, ashamed and really humiliated because I had never had something happen like this to me as a working professional. You feel alienated and it's like well what's wrong with me. What's the problem with me?"[2]

41.     As of the date of this filing, several months later, Ms. McClanahan continues to feel humiliated and ashamed as a result of the double-standard Stab's showed to her versus white patrons and employees.

42.     Stab's is a place of public accommodation.

## CAUSES OF ACTION

**Count 1: Violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a,** *et seq.*

43.     Title II of the Civil Rights Act of 1964 ensures that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."[3]

---

[2] https://www.wafb.com/2024/07/25/i-team-woman-calls-out-restaurant-after-being-booted-over-dress-code-policy/
[3] 42 U.S.C.S. § 2000a(a).

44.    Places of accommodation include "any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises."[4]

45.    An otherwise facially-neutral policy can violate the Civil Rights Act if it is applied in a discriminatory manner.[5]

46.    A business that prohibits "entry to Black customers by stating that there is a strict dress code but allows similarly-dressed White patrons to enter" is a prototypical example of a Title II violation.[6]

47.    Here, Stab's denied Ms. McClanahan service at the restaurant due to a dress code policy that was not only selectively enforced, but was actively violated by white patrons, employees, and the co-owner denying her service.

### Count 2: Violations of La. R.S. 51:2247

48.    Louisiana law makes it "a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement, as defined in this Chapter, on the grounds of race, creed, color, religion, sex, age, disability, as defined in R.S. 51:2232, or national origin."[7]

49.    A place of public accommodation is defined under Louisiana law as "any place, store, or other establishment, either licensed or unlicensed, which supplies goods or services to the

---

[4] 42 U.S.C.S. § 2000a(a)(2).
[5] See, e.g., *Wyatt v. Sec. Inn Food & Beverage, Inc.*, 819 F.2d 69, 70 (4th Cir. 1987); *O'Neill v. Gourmet Sys. of Minn., Inc.*, 219 F.R.D. 445, 456 (W.D. Wis. 2002).
[6] See U.S. Department of Justice, Civil Rights Division, Confronting Discrimination in Hotels, Restaurants, Bars, and Other Places of Public Accommodation. Available online at https://tinyurl.com/3b7j3dnp
[7] La. R.S. 51:2247.

general public or which solicits or accepts the patronage or trade of the general public, or which is supported directly or indirectly by government funds."[8]

50.    Here, Stab's discriminated against Ms. McClanahan on the basis of her race by enforcing a dress code policy not enforced against white patrons to deny her service.

## Count 3: Negligence

51.    Stab's committed negligence in its failure to apply the dress code in an equitable and non-discriminatory fashion.

## RELIEF REQUESTED

52.    Wherefore Plaintiff respectfully requests a trial by jury and that judgment be entered against Defendants and that the Court grant the following:

  a.  Declaratory relief;

  b.  Judgment against Defendants for Plaintiff's asserted causes of action;

  c.  Compensatory damages;

  d.  An award of case costs and attorney's fees;

  e.  An award of pre-judgment and post-judgment interest;

  f.  Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

---

[8] La. R.S. 51:2232(10).

Respectfully submitted,

*/s/ David Lanser*
William Most (La. Bar No. 36914)
David Lanser (La. Bar No. 37764)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
T: (504) 509-5023
T: (504) 533-4521
F: (504) 414-6400
Email: williammost@gmail.com
          david.lanser@gmail.com

14