**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **Y'MINE McCLANAHAN,** | \* | |
| | | **CIVIL ACTION NO.: 3:25-cv-00328** |
| *Plaintiff*, | \* | |
| | \* | |
| **VERSUS** | | **JUDGE: BRIAN A. JACKSON** |
| | \* | |
| **STAB'S PRIME LLC D/B/A STAB'S** | \* | |
| **PRIME STEAK AND SEAFOOD, DOE** | \* | **MAGISTRATE JUDGE:** |
| **DEFENDANTS 1-10,** | | **ERIN WILDER-DOOMES** |
| | \* | |
| *Defendants*. | \* | |

**DEFENDANT STAB'S PRIME, LLC'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Stab's Prime, LLC respectfully submits this memorandum in support of its motion for summary judgment as follows:

### I.    INTRODUCTION

Stab's Prime denied service to Plaintiff Y'Mine McClanahan for one reason: her attire violated the restaurant's dress code because her areolas were visible. That is not race discrimination, it is uniform enforcement of a facially neutral policy.

Ms. McClanahan's own testimony defeats her claims. Specifically, she admits that her attire violated the dress code; she cannot identify any tangible evidence of racial animus or explain why the Stab's Prime co-owner who asked her to cover up seated three other Black women during the same interaction, and she acknowledges that her true grievance is her belief that was treated differently because of her size, not her race. Her subjective belief of discrimination (whether weight or race), supported only by her characterization of an employee's "demeanor" and "tone," is insufficient to survive summary judgment.

1

## II.     FACTS

Stab's Prime operates a high-end steakhouse located at 7666 Jefferson Highway in Baton Rouge, Louisiana. Stab's Prime has been open since October 2017 and serves thousands of customers per week. *Kimball* 28:7-9. It enjoys a diverse customer base that is reflective of the Greater Baton Rouge community, with approximately fifty percent Black and fifty percent White patronage on any given day. *Kimball* 28:7-29:20; *Murvin* 50:24-51:5.

### a.  Stab's Prime's Dress Code.

During the pandemic, Stab's Prime observed a general shift towards less formal and more revealing attire among its patrons. *Murvin* 27:1-28:4.  To maintain its fine-dining atmosphere, Stab's Prime implemented a written attire policy asking customers to wear business casual attire appropriate for a fine dining, family restaurant and prohibiting, among other things, ball caps, gym wear, sweat pants, muscle shirts, clothing with offensive graphics or language, exposed undergarments, revealing clothing, cutoff shorts, flip flops, and torn jeans. *Murvin* 26:3-27:9; *Kimball* 44:3-46:20; Exhibit C, *Stab's Prime's Dress Code*. The dress code was posted on Stab's Prime's website, and the restaurant has signage at its front door, noting proper attire required. *Kimball* 46:18-47:1. Stab's Prime also allows more casual attire in its bar area, *e.g.* individuals may wear hats there; however, it does not make exceptions for certain clothing even for those seated at the bar, such as clothing with offensive language or graphics. *Kimball* 45:1-8 and 56:11-24.

Stab's Prime's managers and hostesses are responsible for enforcing its dress code, and employees are trained on the policy when they are hired and, on a case-by-case basis. *Murvin* 19:24-22:18; *Kimball* 32:1-33:25. Stationed at the entrance of the restaurant, hostesses are the first line of enforcement since managers are often in other parts of the restaurant and are often high

school or college-aged girls, which is common for the local restaurant industry. *Id.* Because of that, managers encourage hostesses to involve them if they have a question about someone's attire or if they do not feel comfortable in a certain situation. *Id.* This reality does not prevent Stab's Prime from maintaining its upscale environment, and seldom does it need to enforce its dress code, sometimes going months without having to refuse service on that basis. *Kimball* 55:19-56:10.

Although Stab's Prime strives for perfect enforcement of its dress code, it recognizes that on rare occasions, customers who are not dressed in compliance with its dress code are seated in the restaurant. As a practice, Stab's Prime does not ask seated customers to leave or change due to their attire and instead focuses dress code enforcement on interactions before a customer is seated. *Murvin* 31:19-32:11; *Kimball* 32:1-33:6. These instances are few and far between, and Stab's Prime has been successful throughout its history in maintaining the upscale atmosphere its customers expect. *Kimball* 55:19-56:10.

### b. Plaintiff's Extensive History at Stab's Prime Without Issue.

The alleged incident at issue in this lawsuit was not Plaintiff Y'Mine McClanahan's first time going to Stab's Prime. Before that day, Ms. McClanahan had been to Stab's Prime at least 15 times since 2019, including on a nearly monthly basis in the years leading up to the alleged incident that occurred in July 2024, and she never had an issue during any of her prior visits. *McClanahan* 62:15-19 and 68:17. She also had eaten there with at least four different Black women– who similarly never had a negative experience at Stab's Prime. *McClanahan* 74:25-76:17.

Generally, the service was good each time Ms. McClanahan dined at Stab's Prime, and the only instance where anything remotely negative occurred was one instance where her food did not taste right and the server had the food remade to remedy the issue. *McClanahan* 69:10-71:10.

As to her knowledge of Stab's Prime's dress code, Ms. McClanahan was not aware that it had a specific dress code but understood that it was a nice steakhouse on par with other establishments like Ruth's Chris and Fleming's. *McClanahan* 76:18-78:13 ("[Stab's Prime is] a nice place to eat. . . . It's not Picadilly.").

### c.  The Alleged Incident.

On July 23, 2024, Ms. McClanahan attempted to dine at Stab's Prime. *McClanahan* 68:17-23. Per Ms. McClanahan, she was wearing a "bandeau" that exposed her cleavage, shoulders, and stomach, and was not wearing a bra. *McClanahan* 93:6-94:21. She admits that her attire was not compliant with the dress code, although she was not aware of that before the incident in question. *McClanahan* 81:5-23.

When she entered the restaurant, Ms. McClanahan spoke with a young hostess, Olivia Brocato, who had only been employed by Stab's Prime for two to three weeks. *Murvin* 52:24-53:7. Dori Murvin, a co-owner and general manager of Stab's Prime, saw Ms. McClanahan at the hostess stand with Ms. Brocato nervously looking back and forth in her direction and at Ms. McClanahan. *Murvin* 11:10-19 and 53:13-54:14.

Ms. Murvin then intervened and observed that Ms. McClanahan's strapless top (*i.e.*, her bandeau) was very low and the tops of her areolas were visible. *Murvin* 53:25-54:14. Ms. Murvin politely informed Ms. McClanahan that her top was "too revealing" and asked if she had a jacket or sweater she could put on. *Murvin* 56:1-59:12; Ex. E-1, *Recorded Statement of Jenetta Hills* at 1:49-2:27. Ms. McClanahan did not have a jacket and became upset, eventually becoming combative and recording Ms. Murvin and other employees. *Murvin* 56:1-59:12; *Recorded Statement of Jenetta Hills* at 1:18-1:33; Ex. F, *McClanahan's Cell Phone Footage*.

4

During the interaction with Ms. McClanahan, three Black women, Jenetta Hills, Loreka Williams and Fredericka Orange, entered the restaurant, and Ms. Murvin excused herself to seat them in the bar area, which she did because some of the women were wearing ball caps. *McClanahan* 101:14-18 and 105:20-106:6; Exs. G and H, *Stab's Prime's Security Footage Nos. 1 and 2*. These same women saw Ms. McClanahan in the parking lot before she went into the restaurant and were not surprised when she was not seated. *Recorded Statement of Jenetta Hills* at 00:26-01:07 and 3:32-4:00. In fact, they immediately commented on her inappropriate attire upon seeing her in the parking lot and could see that the tops of her breasts were exposed. They exclaimed to each other that "she couldn't be going in Stab's like that," predicting "[Stab's Prime] was not going to let her in." *Id.*

When they entered the restaurant, Ms. McClanahan was arguing with Ms. Murvin and Ms. Brocato, acting belligerently and saying inappropriate things per Hills. *Recorded Statement of Jenetta Hills* at 1:18-1:42. Ms. Hills also noticed that Ms. Brocato appeared nervous and timid and witnessed Ms. Murvin treating Ms. McClanahan in a polite and professional manner, explaining why they could not seat her. *Recorded Statement of Jenetta Hills* at 5:22-5:45. Stab's Prime's surveillance footage captured most of the incident (without audio), and Ms. McClanahan recorded some of Ms. Murvin's statements; Ms. Hills also provided a recorded statement regarding what she witnessed. These videos and Ms. Hills's recorded statement are attached to this motion for the Court's consideration, as they illuminate the truth of what occurred.

When Ms. McClanahan eventually left Stab's Prime, she told Ms. Murvin and Ms. Brocato that she "was going to make them famous." *Murvin* 59:6-15. Ms. McClanahan made good on her promise.

### d. The Aftermath.

After Ms. McClanahan left the restaurant, she posted a video on Instagram and Facebook, accusing Stab's Prime of discrimination. *McClanahan* 107:18-108:8. The posts went viral, and national news outlets published stories about Ms. McClanahan's allegations. *Murvin* 35:10-13; *McClanahan* 143:20-144:22. The local NAACP chapter also held a protest outside of the restaurant, and Ms. McClanahan appeared on podcasts and other media outlets to publicize her allegations. *McClanahan* 121:3-122:2. As she admitted in her deposition, Ms. McClanahan's objective was and is "to shut down Stab's Prime". *McClanahan* 122:12-123:23.

In response to Ms. McClanahan's allegations, Stab's Prime and its employees received significant backlash, including threats, harassing and abusive calls and messages, and an inundation of false Google reviews. *Kimball* 125:12-137:7; *Murvin* 71:21-76:4. Ms. Murvin, Ms. Ms. Brocato, and another employee who was videoed by Ms. McClanahan during the incident all ended up taking extended leaves to cope with the public onslaught. *Kimball* 98:3-21 and 124:13-125:11. The undeserved hate has created a living nightmare for Stab's Prime, calling into question the establishment's integrity and reputation. *Kimball* 97:16-24. To this, Stab's Prime's majority owner, Kevin Kimball, testified at his deposition about the emotional toll Ms. McClanahan's allegations have taken on him and his staff, especially given the inclusive and welcoming culture he and management have worked hard to foster. *Kimball* 91:21-110:5 and 122:2-133:23.

Ms. McClanahan's serious allegations are even more troubling in light of her deposition testimony that illuminates the true motivation for her campaign against Stab's Prime – she was embarrassed and felt that she was being treated differently because of her size, not her race. *McClanahan* 117:20-119:1. Indeed, she testified that "it's likely" she would have been allowed to dine on the day of the incident if she was thinner and that the incident made her feel like she was

6

being discriminated against because of her weight. *McClanahan* 117:20-119:1. This is why she could not reconcile her allegations of race discrimination with Ms. Murvin seating three different Black women during the incident. *McClanahan* 111:17-114:9.

Nonetheless, Ms. McClanahan filed the present lawsuit against Stab's Prime, asserting claims for race discrimination in violation of Title II of the Civil Rights Act of 1964 and Louisiana's state-law equivalent for public accommodations and negligence. R. Doc. 1. All of these claims fail, and summary judgment is warranted.

In particular, Ms. McClanahan's Title II claim fails because there is no direct evidence of discrimination, she cannot evidence a similarly situated comparator outside of her protected class, and there is no evidence from which the Court can infer pretext or racial motivation. Ms. McClanahan's Louisiana Human Rights Act claim fails for the same reasons, and her negligence claim is merely a repackaged discrimination theory that identifies no cognizable duty independent of the anti-discrimination statutes. The undisputed facts, eyewitness testimony, and video evidence all confirm that Ms. McClanahan's claims should be dismissed with prejudice.

## III.    LAW AND ARGUMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. But when—

7

as in this case— "the non-moving bears the burden of proof at trial, the movant may merely point

to an absence of evidence. *Lindsey v. Sears Roebuck & Co.,* 16 F.3d 616, 618 (5th Cir. 1994). When

the movant meets its burden, the burden shifts to the non-movant, who must show by "competent

summary judgment evidence" that there is a genuine issue of material fact for trial. *See Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618.

### a.  McClanahan's Title II Discrimination Claim Fails as Matter of Law.

Plaintiff contends she was discriminated against in violation of Title II of the Civil Rights

Act of 1964. Title II of the Civil Rights Act of 1964 prohibits discrimination in public

accommodations:

> All persons shall be entitled to the full and equal enjoyment of the goods, services,
> facilities, privileges, advantages, and accommodations of any place of public
> accommodation, as defined in this section, without discrimination or segregation
> on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a); *Heart of Atlanta Motel, Inc. v. U.S.*, 379 U.S. 241 (1964).

A plaintiff can use either direct or circumstantial evidence to prove a case of Title II

discrimination. *Dunaway v. Cowboys Nightlife, Inc.*, 436 Fed.Appx. 386, 398 (5th Cir. 2011). In

the absence of direct evidence of discrimination, a plaintiff's Title II claims are subject to the

burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973). *Fahim v. Marriott Hotel Services, Inc.,* 551 F.3d 344, 349 (5th Cir. 2008). "Because of the

'scant case law' addressing public accommodation discrimination claims under Title II, courts

often apply case law developed with respect to claims of employment discrimination brought under

Title VII." *Mayfield v. Beau Rivage Resorts, LLC*, No. 1:23-CV-8-TBM-RPM, 2024 WL 1728667,

at *1 (S.D. Miss. Apr. 15, 2024) (citing *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 349 (5th Cir.

2008)).

Under the burden-shifting framework, Ms. McClanahan must establish a *prima facie* case demonstrating that: "(1) she is a member of a protected class; (2) she attempted to contract for the services of a public accommodation; (3) she was denied those services; and (4) the services were made available to similarly situated persons outside her protected class." See, *Hager v. Brinker Texas, Inc.*, 102 F.4th 692, 700 (5th Cir. 2024).

If Ms. McClanahan can establish a *prima facie* case, then Stab's Prime must articulate a legitimate, non-discriminatory reason for taking the actions about which she complains. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). Once Stab's Prime does so, the burden then shifts back to Ms. McClanahan to prove by a preponderance of the evidence that Stab's Prime intentionally discriminated against her because of her race or Stab's Prime reason, if true, is only one reason for its action, and another "motivating factor" is Ms. McClanahan's race. *Id.* (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)). To do so, Ms. McClanahan needs to provide "substantial evidence" to raise a genuine issue of fact. *Mayfield v. Beau Rivage Resorts, LLC*, No. 1:23-CV-8-TBM-RPM, 2024 WL 1728667, at *2 (S.D. Miss. Apr. 15, 2024).

### i. There is no direct evidence of discrimination.

Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Direct evidence includes any statement or written document showing a discriminatory motive on its face." *Portis v. First Nat'l Bank*, 34 F.3d 325, 329 (5th Cir. 1994) (citing *Vaughn v. Edel*, 918F.2d 517, 521 (5th Cir. 1990).

Here, there is no direct evidence of discriminatory animus. Ms. McClanahan's Complaint acknowledges the dress code at issue is facially neutral, and there are no allegations that Ms. Murvin or anyone else made any racial statement, comment, or slur to McClanahan. *McClanahan*

111:1-4. Further, McClanahan admitted in her deposition that, outside of Ms. Murvin's "demeanor and her tone and the way she talked to me, there is nothing that I can like, I guess, tangibly produce" to show racial animus. *McClanahan* 111:2-4. Her subjective belief, standing alone, that Ms. Murvin's "demeanor" and "tone" reflected racial bias is insufficient to constitute direct evidence of discrimination. *See Sandstad*, 309 F.3d at 897. Ms. McClanahan acknowledged that the incident was the first time she ever met Ms. Murvin and that she has no personal knowledge of Ms. Murvin indicating racial animus outside of this single, allegedly disrespectful interaction. *McClanahan* 119:11-14. And McClanahan conceded that "not all disrespect is necessarily racist." *McClanahan* 116:21-22. Accordingly, Ms. McClanahan's claims must be analyzed using the *McDonnell Douglas* burden-shifting framework as there is no evidence of direct discrimination.

### ii.   McClanahan cannot prove a prima face case of discrimination.

Plaintiff's Title II claim fails because she cannot establish the fourth element of her prima facie case—that services were made available to similarly situated persons outside her protected class. To be similarly situated, a comparator must have been in "nearly identical" circumstances. *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 213 (5th Cir. 2004), *cert. denied*, 546 U.S. 976 (2005).

Here, a similarly situated person is a patron of a different race who wore the exact same or similarly revealing attire—where their areolas were visible—and was not denied service by Ms. Murvin.  Ms. McClanahan's testimony confirms the necessity of this case-specific definition of "similarly situation person" as she had dined at Stab's Prime at least 15 times before the incident without issue, and the only time she allegedly experienced any racial animus was the first instance where she interacted with Ms. Murvin at the restaurant. *McClanahan* 68:17-74:14.

10

Ms. McClanahan has not presented any such evidence that satisfies this fourth prong. The photographs of other patrons that Ms. McClanahan attached to her Complaint are insufficient summary judgment evidence because Ms. McClanahan admitted she does not know the identities of the individuals depicted, when the photographs were taken, or the circumstances of the occasion, and she similarly has no personal knowledge of what those individuals were told or by whom regarding Stab's Prime's dress code. Ex. I, *McClanahan's Discovery Responses* at Responses to Requests for Admission Nos. 14-16. None of the photographs in Ms. McClanahan's Complaint depict patrons whose areolas were visible, which was the specific dress code violation at issue. *Murvin* 55:21-25 ("Q: But the violation of the dress code that you described was that her areolas were showing? A: Yes. Q: Was there anything else about her outfit that violated the dress code? A: Not to my knowledge."); *Murvin* 91:12-13 ("I am not seeing [the pictured guest's] areolas, so no."); *Kimball* 35:4-6 ("I cannot see the top of her areolas there. So it is not apples and apples."); *Kimball* 79:15-18 ("Q: So if she had pulled up her top, then she would not be violating the dress code? A: Of course.").

### iii. McClanahan cannot prove Stab's Prime's reason for denying her service is pretext for intentional discrimination or that race was a motivating factor.

Even if Ms. McClanahan could establish a prima facie case of discrimination, she still cannot succeed on her claim because Stab's Prime had a legitimate, non-discriminatory reason for denying her service and she cannot prove otherwise.

Stab's Prime did not seat Ms. McClanahan because her areolas were visible, and Ms. McClanahan admits that her attire violated the dress code. *Murvin* 55:21-22; *Kimball* 78:23-24; *McClanahan* 81:5-23. The burden therefore shifts back to Ms. McClanahan to put forth "substantial evidence" creating a genuine issue of material fact that either (1) Stab's Prime's reason

11

is pretextual, or (2) Stab's Prime's reason, even if true, is only one reason for its action, and another "motivating factor" was her race.

She cannot carry her burden for multiple, compelling reasons. As an initial matter, Ms. Murvin did not outright deny Ms. McClanahan service – instead, she offered to seat her if she had a jacket or something to cover up with. Likewise, no trier of fact can infer Ms. Murvin harbored any racial animus against Ms. McClanahan given that she sat three other Black women during the incident with Ms. McClanahan. *McClanahan* 100:16-18; 105:5-6; *Murvin* 58:10-14; *Kimball* 75:15-19; *Stab's Prime's Video Surveillance Footage*. Again, Ms. McClanahan was asked about this during her deposition and could not reconcile Ms. Murvin's treatment of the other Black women with her claim of racial discrimination. *McClanahan* 112:12-113:3. In fact, she admitted that the difference between her attire and that of the three Black women who were seated was that her clothes were more revealing. *McClanahan* 113:10-12. If race were a motivating factor, Black patrons also would not have been seated, and Ms. Murvin's contemporaneous favorable treatment of other Black patrons is powerful evidence that Stab's Prime's articulated reason is the true and only reason for its decision.

Moreover, these same women from Ms. McClanahan's protected class independently identified Ms. McClanahan's attire as inappropriate and violative of Stab's Prime dress code before Ms. McClanahan even attempted to dine at the restaurant. *Recorded Statement of Jenetta Hills* at 3:32-4:00. They also witnessed Ms. Murvin and Ms. Brocato treat Ms. McClanahan in a fair and professional manner, and they had a typical, pleasant experience at the restaurant that Ms. McClanahan herself had experienced over a dozen times since 2019. *Recorded Statement of Jenetta Hills* at 3:01-3:16.

12

Lastly, the undisputed evidence demonstrates that Stab's Prime enforces its dress code uniformly against patrons of all races. Ms. Murvin testified to specific instances of enforcing the dress code against White and Hispanic patrons, including refusing to seat a White or Hispanic woman for wearing excessively revealing cutoff shorts. *Murvin* 38:13-41:20. She further described addressing a dress code issue with a Black woman whose nipple was visible, and that patron covered up and was seated. *Murvin* 41:25-42:20. Kimball also testified to instances of enforcing the dress code against White patrons who were wearing baseball caps or flip flops. *Kimball* 58:4-63:15 and 68:13-69:12. Accordingly, Ms. McClanahan's Title II discrimination claim fails as a matter of law, and summary judgment should be granted.

**b. The Court Should Also Dismiss McClanahan's State Law Discrimination and Negligence Claims.**

Louisiana law makes it "a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement, as defined in this Chapter, on the grounds of race, creed, color, religion, sex, age, disability, as defined in R.S. 51:2232, or national origin." La. R.S. 51:2247. The Fifth Circuit has noted that La. R.S. 51:2247 under the Louisiana Human Rights Act "is substantively similar to Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(a)," and can be considered together with Title II claims. *Semien v. Pizza Hut of Am., Inc.*, 204 F.3d 1115, 1115 (5th Cir. 1999) (per curiam*); Harrison v. Vici Properties, Inc.,* No. 21-2310, 2022 WL 3586754, at *4 (E.D.La. Aug. 22, 2022). Consequently, Ms. McClanahan's state-law discrimination claim fails for all of the same reasons detailed above with respect to her Title II claim.

Ms. McClanahan's negligence claim fails for similar reason. She contends that Stab's Prime "committed negligence in its failure to apply the dress code in an equitable and non-

13

discriminatory fashion." R. Doc. 1 at ¶51.  This underscores that Ms. McClanahan's negligence claim is merely an extension of her fatally-flawed discrimination claims, and she cannot identify any relevant duty owed to her separate from what that imposed by Title II and the LHRA, much less that Stab's Prime breached any such duty. There is no legal duty in Louisiana requiring a private restaurant to apply subjective dress code standards with mathematical precision, and the undisputed evidence demonstrates that Stab's Prime applied its dress code correctly and in a non-discriminatory manner when it declined service to Ms. McClanahan.  For these reasons, Ms. McClanahan's re-packaged Title II claims, *i.e.* her state-law discrimination and negligence claims, warrant dismissal.

## IV.    CONCLUSION

Based on the undisputed facts, the supporting evidence, and the law, the Court should find that Ms. McClanahan cannot prevail on any of her claims as a matter of law and dismiss them with prejudice pursuant to Fed. R. Civ. P. 56.

Respectfully submitted:

**ADAMS & REESE, LLP**

*/s/ Hunter J. Schoen*
**HUNTER J. SCHOEN (#37862)**
**TAYLOR M. LEDUFF (#39253)**
450 Laurel Street, Suite 1900
Baton Rouge, Louisiana 70801
Telephone: (225) 336-5200
hunter.schoen@arlaw.com
taylor.leduff@arlaw.com
*Counsel for Stab's Prime LLC D/B/A Stab's*
*Prime Steak and Seafood*

14