**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **Y'MINE McCLANAHAN,**<br>*Plaintiff,* | * | **CIVIL ACTION NO.: 3:25-cv-00328** |
| **VERSUS** | * | **JUDGE: BRIAN A. JACKSON** |
| **STAB'S PRIME LLC D/B/A STAB'S PRIME STEAK AND SEAFOOD, DOE DEFENDANTS 1-10,**<br>*Defendants.* | * | **MAGISTRATE JUDGE: ERIN WILDER-DOOMES** |

**STAB'S PRIME'S OPPOSITION**
**TO PLAINTIFF'S MOTION *IN LIMINE***

**MAY IT PLEASE THE COURT:**

Defendant, Stab's Prime, LLC, submits this opposition to the Motion *in Limine* filed by Plaintiff, Y'Mine McClanahan (**Doc. 39**) to set forth the reasons why the Court should deny Plaintiff's motion.

**LAW AND ARGUMENT**

Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Rule 402 of the Federal Rules of Evidence provides that irrelevant evidence is not admissible. As set forth more fully herein, the categories of testimony and evidence that Plaintiff requests this Court to exclude are relevant to disputed facts central to the determination of this matter and thus are admissible.

A. **The Post-Incident Impact on Stab's Prime, Including Third-Party Threats, is Relevant to Determining Plaintiff's Comparative Fault, Credibility, Mitigation of Damages, and is Not Hearsay.**

Plaintiff moves to exclude evidence of the incident's post-viral impact on Stab's Prime, including threatening and harassing calls Stab's Prime received, as irrelevant, prejudicial, and hearsay. Stab's Prime contends this evidence is relevant for a multitude of reasons. First, the jury

will be required to determine whether Plaintiff proved that, but for her race, she would not have been denied service and, if so, what damages Plaintiff suffered as a result. The jury will also decide whether Stab's Prime was negligent, whether Plaintiff was negligent herself, whether that negligence proximately caused her injuries, and whether she failed to mitigate her damages. The jury is entitled to understand the full scope of what occurred after the July 2024 incident to properly assess what distress, if any, was proximately caused by Stab's Prime's conduct versus what distress is attributable to Plaintiff's pre-existing conditions, her decision to publicize the incident, and social media response prompted by her online post.

Plaintiff could not reasonably expect that a social-media post would remain private. People post on social media with the understanding that posts may be shared, commented on, and viewed beyond the original intended audience. Here, Plaintiff chose to make her post public, stated that she was going to make Stab's Prime and Ms. Murvin "famous," and testified that her objective was to shut down Stab's Prime. *See* Doc. 40-3, p.59:11-15; Doc. 40-2, p.122:15-20; p.123:19-23. A reasonable jury could conclude that Plaintiff was not harmed by what transpired but was gratified by it. Therefore, Stab's Prime should be permitted to present evidence from which the jury could conclude that generating death threats to its employees and harm to the business was part of Plaintiff's objective to shut down Stab's Prime. Any resulting harm Plaintiff suffered arose from her own actions, not Stab's Prime's conduct.

Plaintiff also intends to offer Stab's Prime's post-incident revised dress code to suggest that the dress code was applied unfairly on the date of the incident. Evidence concerning the post-incident impact supplies necessary context for that revision. The dress code was one of several measures adopted in response to the extreme backlash including the threats and harm directed at its employees and business, not an admission that the original policy was discriminatory or negligently applied.

The post-incident events also bear on Jamie Meredith's credibility. Plaintiff intends to call Ms. Meredith and introduce messages between them, despite the fact that Ms. Meredith gave Plaintiff accounts that differed from what she told Stab's Prime. The backlash caused Ms. Meredith, Dori Murvin, and Olivia Brocato to take extended time off from work. That context is relevant to whether Ms. Meredith's after-the-fact statements to Plaintiff were true or influenced by the events and consequences that followed the incident. It would be misleading to allow Plaintiff to present only the messages she received from Ms. Meredith, without allowing Stab's Prime to explain the post-incident circumstances potentially affecting their reliability.

Lastly, testimony stating the fact that threats occurred is not inadmissible hearsay. Stab's Prime does not intend to offer the content of any threats for the truth of any matter asserted therein. Instead, the testimony will simply enlighten the trier of fact about the impact those threats, which were prompted by Plaintiff's online post, had on the business and its employees. The same evidence provides necessary context for the revised dress code, how the backlash affected certain witnesses, and causation and mitigation issues the jury must decide. Accordingly, evidence of the post-incident impact on Stab's Prime is relevant and admissible, and the Court should deny Plaintiff's motion on this point.

**B. <u>Efforts Made by Third Parties to Promote Plaintiff's Story are Relevant.</u>**

Plaintiff next moves to exclude evidence of the protest at Stab's Prime and news coverage of the incident, arguing that this evidence is highly prejudicial and that Plaintiff did not participate in these efforts. Stab's Prime avers this evidence is not prejudicial, is directly relevant to Plaintiff's alleged damages, and she did in fact contribute to the publicization of the incident. First, the protest that occurred was organized by Plaintiff's father and not a random, unknown third party. Doc. 40-2, p.134:19-135:9. Next, while Plaintiff claims she "did not ask any news organization to cover the incident," she cannot dispute that she willingly sat for multiple interviews with various news

organizations. It is immaterial that Plaintiff did not initiate the media coverage of the incident. The jury should know that Plaintiff increased public attention by voluntarily participating in these interviews. This is relevant because Plaintiff claims emotional distress damages from the incident, yet she publicized the incident through multiple media appearances.

More importantly, it was Plaintiff's own decision to make her social media post public that spawned public comment. Plaintiff testified she posted the incident to her feed, and someone commented and asked if she could make her post public.[1] Doc. 40-2, p.121:3-12. Plaintiff simply could have declined to make the post public. If Plaintiff's intended audience was her "own like Facebook friends, which are [her] real friends and family," Doc. 40-2, p.161:8-10, she did not need to make the post public. In short, the jury is entitled to evaluate whether Plaintiff's distress was caused by Stab's Prime's conduct or whether it was self-inflicted through her own decision to bring the story into the public eye. The third-party efforts Plaintiff seeks to exclude would not have occurred but for her communications with them. Plaintiff cannot now claim it is prejudicial. Stab's Prime does not intend to introduce evidence to blame Plaintiff for the protest organized by her father and the news media coverage, but rather to show Plaintiff's own voluntary participation in publicizing the incident through news interviews is the proximate cause of her damages and not any actions attributable to Stab's Prime.

The evidence will also show that this was not Plaintiff's first time publicly posting about a perceived racist incident in an effort to harm a business. In 2014, Plaintiff publicly posted about a similar incident involving a coffee shop. Doc. 40-2, p.54:2-p.55:25; p.57:1-11. The publicization of the prior incident bears on motive and intent, particularly whether Plaintiff's publicization of

[1] Facebook allows users to set post visibility to friends only while blocking public access. Making a post public would allow anyone, including people outside the user's initial audience, to view, comment on, and share content.

the present incident and voluntary participation in the resulting media attention were deliberate to pressure or damage a business's reputation to "shut them down."

### C. Dori Murvin's and Jenetta Hills's Testimony Regarding Olivia Brocato's Demeanor is Admissible.

Plaintiff next argues that testimony regarding Olivia Brocato's impressions of the incident should be excluded because no party has been able to contact the former hostess and because it is "pure hearsay." Plaintiff's characterization is wrong. Stab's Prime is not offering Ms. Brocato's own impressions or statements. Instead, Stab's Prime offers Ms. Murvin's and Ms. Hills's own perceptions of Ms. Brocato's demeanor and conduct. That testimony is not hearsay because it describes what these witnesses personally observed. Plaintiff takes issue with the fact that Stab's Prime repeatedly refers to Ms. Brocato as being nervous around Plaintiff. This testimony was presented through Dori Murvin's and Jenetta Hill's own firsthand observations, which is not hearsay. Ms. Murvin was an eyewitness to the incident and testified about what she personally perceived. Ms. Murvin will testify that she intervened after seeing Plaintiff enter the restaurant wearing attire that was not appropriate under the restaurant's dress code and seeing Ms. Brocato appear nervous and not equipped to handle the situation. Specifically, Ms. Murvin testified Ms. Brocato was very nervous and a little rattled. Doc. 40-3, p.63:10-13. She explained that, when she walked up to the hostess stand, Ms. Brocato "[…] was kind of looking at me kind of nervous and kind of looking at Miss McClanahan, and I didn't know what was going on at first, but then I saw what she was looking at, so I kind of figured out what was going on. I figured out why Olivia was nervous." Doc. 40-3, p.54:5-10. Ms. Murvin personally observed Ms. Brocato's nervous demeanor and her glances back and forth and uncertainty about how to handle the situation with Plaintiff. Again, this testimony is about what Ms. Murvin personally perceived and not out-of-court statements offered for the truth of the matter asserted.

Likewise, Jenetta Hills personally observed that Ms. Brocato appeared a little nervous and timid during the incident. Doc. 30-2, p.5 at ¶12(mm). Ms. Hills can also testify about her firsthand observations of Ms. Brocato's demeanor for the same reason. Ms. Hills will also testify that Stab's Prime treated Plaintiff professionally, that Plaintiff was rude and combative, and that she observed how Ms. Brocato treated Plaintiff and conducted herself during the encounter. Doc. 30-2, p.1 at ¶7; p. 5 at ¶12(mm-nn). Those observations are likewise based on Ms. Hills's own perception and are admissible. Plaintiff's position is one-sided. She seeks to testify about her impressions of Ms. Murvin's demeanor while preventing Stab's Prime from presenting eyewitness testimony about Ms. Brocato's demeanor and the interaction.

Plaintiff further argues that Stab's Prime "stated that Ms. Brocato witnessed various specific statements Plaintiff allegedly made (which she denies)." This mischaracterizes the record. Stab's Prime stated that Plaintiff, as she was walking out the door of the restaurant, told Ms. Murvin and Ms. Brocato that she was going to make them famous. Doc. 40-3, p.59:6-15. Stab's Prime is not attributing any observations of various specific statements to Ms. Brocato. More importantly, Ms. Murvin, who was standing right next to Ms. Brocato, can testify about what Plaintiff said to both her and Ms. Brocato. The point remains that Stab's Prime is offering the directly involved witnesses' own observations, not Ms. Brocato's out-of-court impressions.

For these reasons, testimony regarding Ms. Brocato's demeanor and conduct, as perceived by Ms. Murvin and Ms. Hills, is admissible, and Plaintiff's motion on this topic should be denied.

**D. <u>Jenetta Hills's and Loreka Williams's Testimony about Plaintiff is Admissible and Relevant.</u>**

Under Fed. R. Evid. 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Both Ms. Hills and Ms.

Williams were present at Stab's Prime on the day of the incident and personally observed Plaintiff's attire. They also observed the interaction between Plaintiff and Ms. Murvin. They therefore possess personal knowledge of the matters at issue. Ms. Hills has dined at Stab's Prime many times, and, based on those experiences, remarked upon seeing Plaintiff that Plaintiff would not be able to get in. Their testimony is based on personal observations and experience, not speculation or hearsay.

Federal Rule of Evidence 701 provides that a lay witness may offer an opinion so long as that opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Here, Ms. Hills's and Ms. Williams's lay opinions regarding Plaintiff's attire satisfy each element and are admissible because they are based on their first-hand observations of Plaintiff's attire. Additionally, Ms. Hills's and Ms. Williams's testimony is helpful to determine a critical fact at issue, which is whether Plaintiff's attire violated the restaurant's dress code. Lastly, their testimony is not based on scientific, technical, or other specialized knowledge. The Fifth Circuit has held that "[a]n opinion ... is not objectionable simply because it embraces an ultimate ... issue" for the jury's determination. *United States v. Churchwell*, 807 F.3d 107, 118 (5th Cir. 2015).

Contrary to Plaintiff's assertion, Ms. Hills's and Ms. Williams's testimony on the appropriateness of Plaintiff's attire bears directly on whether Stab's Prime discriminated against Plaintiff. Their testimony helps establish that Plaintiff's attire violated the restaurant's established dress code and Stab's Prime's decision to decline service was based on a legitimate, non-discriminatory reason. Because their firsthand observations corroborate Stab's Prime's position, their testimony is highly relevant and should be admitted. Plaintiff seeks to offer her own account of what she perceived from the interaction while seeking to preclude directly involved witnesses

from describing their own perceptions of Plaintiff's attire, conduct, and Stab's Prime's response. The jury should hear all relevant firsthand accounts and decide what weight to give them. Plaintiff is not entitled to present her impressions that solely benefit her while excluding the witnesses whose observations contradict them.

**E. A Blanket Exclusion of Unidentified Restaurant Patrons Is Not Warranted.**

Plaintiff also seeks a ruling from this Court excluding the testimony from other unidentified restaurant patrons. Any patron who was present at Stab's Prime on the day of the incident and possesses personal knowledge of the events may testify under Federal Rule of Evidence 602. Accordingly, Plaintiff's overbroad request should be denied. Alternatively, the admissibility of this testimony can be addressed at trial as opposed to the issuance of a blanket exclusion.

## CONCLUSION

For the foregoing reasons, Defendant Stab's Prime, LLC respectfully requests that the Court deny Plaintiff's Motion *in Limine* (Doc. 39) in its entirety. The evidence and testimony Plaintiff seeks to exclude are relevant and admissible. Alternatively, the Court should reserve ruling on these issues until the evidence is offered at trial, where its admissibility can be properly assessed in context.

Respectfully submitted:

**ADAMS & REESE, LLP**

*/s/Taylor M. LeDuff*

**HUNTER J. SCHOEN (#37862)**
**TAYLOR M. LEDUFF (#39253)**
450 Laurel Street, Suite 1900
Baton Rouge, Louisiana 70801
Telephone: (225) 336-5200
hunter.schoen@arlaw.com
taylor.leduff@arlaw.com

and

**ELIZABETH A. ROUSSEL (#27943)**
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
liz.roussel@arlaw.com
***Counsel for Stab's Prime, LLC D/B/A Stab's Prime Steak and Seafood***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of October, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

*/s/Taylor M. LeDuff*